IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                Cr. No.  04-20474-D

WALTER VOWELL,

        Defendant.

---

**POSITION OF DEFENDANT WITH
REGARD TO SENTENCING FACTORS
AND SENTENCING MEMORANDUM**

---

      Comes now the defendant, Walter Vowell, through appointed counsel, pursuant to Rule 32 of the Federal Rules of Criminal Procedure and Local Criminal Rule 32.1, and submits the following with respect to sentencing in this case.

**I.**      **Defense Counsel Certification**

      Counsel received Mr. Vowell's presentence investigation report on or about February 1, 2006.  Pursuant to Loc. Crim. R. 32.1(c), counsel forwarded defendant's objections, in writing, to the probation officer assigned to this case on or about April 5, 2006.  Counsel was not able to review the PSR with Mr. Vowell until that time because Mr. Vowell had been sent away on a study.  There are a number of factual and legal objections to the PSR which have not been resolved and, will not, in all likelihood, be resolved prior to the sentencing hearing in this case.

**II.     The Sentencing Hearing**

Counsel anticipates no witnesses during the sentencing hearing in this matter. However, due to the number of objections, it is probable that the hearing will last more than thirty minutes.

**III.    Sentencing Factors in Dispute**

**A.     Factual Objections.**

Mr. Vowell objects to the facts contained in ¶8 which set forth allegations attributed to Ms. Katherine Sue Pratt regarding Mr. Vowell's alleged conduct in this matter. These allegations are simply unsupported by any evidence in this case and clearly do not meet even the most minimal level of trustworthiness as they are made by a co-defendant who has everything to gain by minimizing her involvement in this matter while at the same time maximizing Mr. Vowell's involvement. Any specific offense characteristics that have been applied in the report based on Ms. Pratt's rendition of the facts cannot be factually supported and should be removed from the report.

**B.     Legal Objections.**

Mr. Vowell objects to several of the legal conclusions and application of the sentencing guidelines in this case. First, he objects to ¶24 and the application of U.S.S.G. §2G2.2(b)(2)(A). The facts of this case do not support the conclusion that there was distribution for pecuniary gain in this case. Ms. Pratt is apparently the sole source of this information. In ¶8 of the report, it states that Ms. Pratt indicated "Vowell suggested filming K.T. as a way to make money." As previously noted, Ms. Pratt clearly cannot be a reliable source of information in this case. Moreover, there is no other reliable, credible evidence that Mr. Vowell ever distributed the item for pecuniary gain nor that he even intended to distribute it. Therefore, Mr. Vowell asserts that

2

U.S.S.G. §2G2.2(b)(2)(A) should not be applied.

Mr. Vowell also objects to ¶¶30 - 35 and the multiple count adjustment. It is Mr. Vowell's position that both counts should be grouped together. Groups of closely related counts are determined with reference to U.S.S.G. §3D1.2. First, if the specific offense characteristic set forth in U.S.S.G. §2G2.2(b)(4) applies, then the two counts should be grouped together under U.S.S.G. §3D1.2(c), which states that "when one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts," then the counts should be grouped together. This section provides that when conduct that represents a separate count is also a specific offense characteristic in or other adjustment to another count, the count represented by that conduct is to be grouped with the count to which it constitutes an aggravating factor. In this case, if the specific offense characteristic set forth in U.S.S.G. §2G2.2(b)(4) applies, it only applies because the conduct at issue, the sexual conduct with the minor victim charged in Count 1, is the specific offense characteristic/adjustment to Count 2. Thus, both counts should be grouped together if this specific offense characteristic applies to avoid the problem of "double counting." In this case then, the total offense level, prior to any deductions for acceptance of responsibility would be 33 (highest of the counts, Count 1).

If the Court sustains this objection to the multiple count adjustment, then ¶36 should be changed to reflect a level 34 under U.S.S.G. ¶4B1.5. Subtracting the entire 3 levels for acceptance would leave Mr. Vowell with a total offense level of 31 which equates to an advisory guideline range of 151 - 188 months. Thus, Mr. Vowell objects to the total offense levels set forth currently in the PSR and Worksheet B and D.

Mr. Vowell further objects to ¶89 of the PSR and the suggestion that there are factors that may warrant an upward departure in this case. Two reasons are given for this suggestion. First, it is suggested that Mr. Vowell administered drugs to the victim to facilitate the commission of the offense. This allegation is simply unsupported by even the facts contained in ¶8 of the PSR. Apparently this information was gleaned from Ms. Pratt's allegations. However, Ms. Pratt's statements with respect to the allegation that Mr. Vowell administered drugs to the victim are made in terms of a possibility and not a certainty. Ms. Pratt allegedly stated that "Vowell mentioned giving K.T. Tylenol PM **but she did not know if he did**." This information clearly does not support a conclusion that Mr. Vowell administered drugs to the victim. Moreover, Ms. Pratt's veracity is clearly suspect. Throughout this entire matter, Ms. Pratt has sought to minimize her actions when clearly she was at a bare minimum a co-equal participant in this matter. Ms. Pratt's word is simply not worth anything and therefore, any conclusions made based on her allegations cannot be supported.

The second reason for the suggested upward departure is because the victim has apparently not improved and additional counseling may be required. There is simply no basis in fact or law for an upward departure based on this reason. While it is clearly unfortunate that the victim is continuing to have difficulties, the guidelines adequately address this issue. Moreover, because Mr. Vowell is subject to a restricted guideline range of 300 months, which is over 120 months higher than the low end of the advisory guideline range, any "upward departure" from this mandatory minimum would clearly contravene 18 U.S.C. §3553(a). Counsel suggests that a sentence in excess of the 300 months in this case would simply constitute retribution and be nothing more than "piling on" which is not a basis for an upward departure.

Finally, Mr. Vowell also objects to the mandatory minimum sentence for Count 1 of the indictment pursuant to 18 U.S.C. §2251(e). It is Mr. Vowell's position that the imposition of a 25 year mandatory minimum pursuant to 18 U.S.C. §2251(e) violates his rights under the Fifth and Sixth Amendments to the United States Constitution. Counsel recognizes that presently this type of objection has been overruled by numerous courts in other contexts, (ie. subsequent convictions under 18 U.S.C. §924(c)), including the United States Supreme Court. See Harris v. United States, 536 U.S. 545 (2002). Nevertheless, counsel wishes to preserve this issue for appeal and provides the following argument in support of this objection.

In Harris, it appeared the Court would limit Apprendi v. New Jersey, 530 U.S. 466 (2000) solely to factors that increase the statutory maximum. The Supreme Court also acknowledged certain important exceptions to the Apprendi principle. For example, where mandatory minimums, or "traditional" sentencing factors like prior convictions in Almendarez-Torres v. United States, 523 U.S. 224 (1998), were at issue, a judge could make findings in lieu of a jury. See Harris, 536 U.S. at 553.

Harris involved a single statute: 18 U.S.C. § 924(c)(1)(A). See id. at 550. For carrying a firearm, the mandatory minimum was five years; for brandishing it, the mandatory minimum increased to seven years. See id. at 550-51. Although Harris was "only" convicted by a jury of "carrying" a firearm, the judge found him guilty of "brandishing" and sentenced him to seven years. See id. at 551.

Justice Kennedy, joined by Justices Rehnquist, O'Connor, Scalia and Breyer, interpreted §924(c)(1)(A) as establishing a single offense, with "brandishing" a firearm a sentencing factor akin to "traditional" sentencing factors like prior convictions. See id. at 556. In effect, the Court

5

suggested that, as a general matter, whenever traditional sentencing factors appear in a statute, it is reasonable to assume that Congress intended them to be treated differently from offense elements--with a lesser burden of proof, and a judge, instead of a jury, as decision maker. Cf. Castillo v. United States, 530 U.S. 120, 126 (2000) (emphasizing that "[t]raditional sentencing factors often involve either characteristics of the offender, such as recidivism, or special features of the manner in which a basic crime was carried out (e.g., that the defendant abused a position of trust or brandished a gun))."

In addition, four justices found that Apprendi applied only to facts increasing the maximum sentence, not to facts increasing the mandatory minimum sentence--a holding in which Justice Breyer did not join. Justice Breyer wrote separately, noting that he could not distinguish Apprendi "from this case in terms of logic." Harris, 536 U.S. at 569 (Breyer, J., concurring in part and concurring in the judgment). At the same time, he reiterated his position that Apprendi was wrongly decided.

Justice Thomas dissented, joined by Justices Stevens, Souter and Ginsburg, characterizing Apprendi 's holding more broadly than the decision's majority. They opined that Apprendi applies whenever a "fact exposes a defendant to greater punishment than what is otherwise legally prescribed," whether that fact "raises the floor or raises the ceiling." Id. at 579 (Thomas, J., dissenting).

Typically, the government, in arguing for sentencing factors as opposed to elements, rests its arguments on Apprendi's focus on statutory maximums, on Harris ' distinction between minimum and maximum sentences, and on Harris ' reaffirmation of the distinction between traditional sentencing factors and offense elements established in Almendarez-Torres. However,

6

these holdings have been substantially muddied, if not entirely undermined, by the Court's decisions in Blakely, Booker, and Shepard.  Blakely v. Washington, 542 U.S. 296 (2004); United States v. Booker, 543 U.S. 220 (2005); Shepard v. United States, 544 U.S. 13 (2005).

Blakely broadened Apprendi by requiring that all facts "which the law makes essential to the punishment" be subject to Sixth Amendment protections.  Blakely, 544 U.S. at 302 (quoting 1 J. Bishop, Criminal Procedure § 87 (2d ed. 1872)).  The Court effectively chose an "impact" test, focusing on the impact of such facts on punishment, rather than on the formalistic distinctions between sentencing factors and offense elements.  Its concern was not simply about a fact's effect on the statutory maximum, but more generally, about its effect on punishment.

In Booker, the Court reaffirmed this approach by applying it to the Federal Sentencing Guidelines. See 543 U.S. at 232 (Stevens, J.).  The Sixth Amendment, the Court found, prevents federal judges from making factual determinations that increase a defendant's sentence under the Guidelines on the basis of facts not reflected in the jury's verdict.  See id. at 244.  The Court rejected the government's argument that the Federal Sentencing Guidelines were "guidelines" after all--not the "diktats" that some critics described.  See Jose Cabranes & Kate Stith, Fear of Judging: Sentencing Guidelines in the Federal Courts 95 (1998) (describing the Federal Sentencing Guidelines as a set of "administrative diktats" that the Commission "promulgated and enforced ipse dixit").

An impact test necessarily casts doubt on Harris ' distinction between mandatory minimum provisions and statutory maximums.  It is difficult to envision a situation in which a fact that determines a mandatory minimum is not considered "essential" to punishment.  Moreover, if Federal Sentencing Guidelines troubled the majority in Booker, despite the

possibility of downward departures, mandatory minimum provisions are likely to be of even greater concern.

And to complete the trilogy, dicta in Shepard even calls into question the "traditional sentencing factor" approach. In Shepard, the Court held that a sentencing court could only rely on prior convictions as predicates for Armed Career Criminal status, if the statutorily required characteristics of these convictions were evidenced by "the charging document, the terms of the plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant or some comparable judicial record of this information." 125 S.Ct. at 1263. Justice Thomas, concurring, went further, casting doubt on Almendarez-Torres, which he noted was "eroded" by the Court's subsequent decisional law. See id. (Thomas, J., concurring in part and concurring in the judgment). Indeed, he went so far as to count the votes for reversing Almendarez-Torres; a majority of the Court, he maintained, now recognized that Almendarez-Torres was wrongly decided. See id. (citing Almendarez-Torres, 523 U.S. at 248-49 (Scalia, J., joined by Stevens, Souter, and Ginsburg, J., dissenting); Apprendi, 530 U.S. at 520-21 (Thomas J., concurring)).

In light of what appears to be Almendarez-Torres and Harris' demise, counsel submits that this Court could properly conclude that the mandatory minimum sentence of 25 years under Count 1 does not apply because a jury did not find the essential elements necessary to impose a 25 year sentence and Mr. Vowell did not admit the essential elements necessary to impose a 25 year sentence. Specifically, there has not been the proper finding that Mr. Vowell had been previously convicted of a violation of "the laws of any State relating to the sexual exploitation of children." 18 U.S.C. §2251(e). Accordingly, this Court could sentence Mr. Vowell within the

8

advisory guideline range which is asserted to be 151 - 188 months.

## IV.     Defendant's Position as to Sentencing

The following is provided to the Court with respect to Defendant's position as to sentencing in this matter.  Defendant hereby sets forth all factors which the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

### A.     Principles of Sentencing

As this Court is aware, in sentencing a defendant, courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).  In a thoughtfully worded concurrence in United States v. Martin, 438 F.3d 621 (6th Cir. 2006), Judge Martin explained the District Court's duty with respect to sentencing as follows:

> We have stated that "[o]nce the appropriate advisory Guideline range is calculated, the district court throws this ingredient into the section 3553(a) mix." United States v. McBride, 434 F.3d 470, 476 (6th Cir.2006); 18 U.S.C. § 3553.  Prior to Booker, sentences outside of the Guideline range were severely limited; now, "with greater latitude" a "district court need only consider [the Guideline range] along with its analysis of the section 3553(a) factors." Id.
>
> Now that section 3553(a) is the focal point, and the Guidelines sentence is merely advisory, the fact that the district court calculated Martin's criminal history score to be seven based on its separate counting of his four car thefts, is "not the end of the sentencing inquiry; rather, it is just the beginning." Id.; see also United States v. Mickelson, 433 F.3d 1050, 1055 (8th Cir.2006) ( "As we recognized in United States v. Haack, 403 F.3d 997, 1002-03 (8th Cir.2005), calculation of the appropriate guideline sentence is only the first step in sentencing decisions under Booker, for the court must also consider the § 3553(a) factors before making its ultimate determination." ).  Section 3553(a) instructs district courts to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth in section 3553(a).

United States v. Martin, 438 F.3d 621, 641 (6th Cir. 2006).

Furthermore, the Sixth Circuit has succinctly addressed the duties of the District Court when imposing a sentence. In United States v. Montanez, 442 F.3d 485, 494 (6th Cir. 2006), the Court stated:

> On remand, the district court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of 18 U.S.C. §3553(a). See also United States v. Richardson, 437 F.3d 550, 553-54 (6th Cir.2006) ("We emphasize the obligation of the district court in each case to communicate clearly its rationale for imposing the specific sentence. Where a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for [accepting or] rejecting it."); Foreman, 436 F.3d at 644 n. 1 ("It is worth noting that a district court's job is not to impose a 'reasonable' sentence. Rather, a district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2). Reasonableness is the appellate standard of review in judging whether a district court has accomplished its task."); United States v. Jackson, 408 F.3d 301, 305 (6th Cir.2005) (reaffirming that "we as an appellate court must still have the articulation of the reasons the district court reached the sentence ultimately imposed"); United States v. Webb, 403 F.3d 373, 383 (6th Cir.2005) ("Post- Booker we continue to expect district judges to provide a reasoned explanation for their sentencing decisions in order to facilitate appellate review.").

Thus, as noted by Judge Martin and as noted in United States v. Montanez, the primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Title 18 U.S.C. §3553(a)(2) states that such purposes are:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)   to afford adequate deterrence to criminal conduct;
(C)   to protect the public from further crimes of the defendant; and
(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most

effective manner.

Section 3553(a) further directs sentencing courts to consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (3) the kinds of sentences available; (6) the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

Moreover, the remedial majority in United States v. Booker 543 US 220, 245-268 (2005), directed courts to consider all of the §3353(a) factors, many of which the guidelines either reject or ignore.  For example, under § 3553(a)(1) a sentencing court must consider the "history and characteristics of the defendant."  But under the guidelines, courts are generally forbidden to consider the defendant's age, U.S.S.G. § 5H1.1, his education and vocational skills, § 5H1.2, his mental and emotional condition, § 5H1.3, his physical condition including drug or alcohol dependence, § 5H1.4, his employment record, § 5H1.5, his family ties and responsibilities, § 5H1.6, his socio-economic status, § 5H1.10, his civic and military contributions, § 5H1.11, and his lack of guidance as a youth, § 5H1.12.  The guidelines' prohibition against considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant.  The only aspect of a defendant's history that the guidelines permit courts to consider is criminal history.  Thus, in cases in which a defendant's history and character are positive, consideration of all of the § 3553(a) factors might call for a sentence outside the guideline range.

Further, § 3553(a)(2)(D) requires a sentencing court to evaluate the need to provide the defendant with education, training, treatment or medical care in the most effective manner.  This

11

directive might conflict with the guidelines, which in most cases offer only prison.  See U.S.S.G. § 5C1.1 (describing limited circumstances in which court can impose sentence other than imprisonment).  In some cases, a defendant's educational, treatment or medical needs may be better served by a sentence which permits the offender to remain in the community.

Finally, § 3553(a)(7) directs courts to consider "the need to provide restitution to any victims of the offense."  In many cases, imposing a non-custodial sentence or only a short period of imprisonment will best accomplish this goal by allowing the defendant to work and pay back the victim.  The guidelines do not account for this arrangement.  In sum, in every case, a sentencing court must now consider <u>all</u> of the § 3553(a) factors, not just the guidelines.  And where the guidelines conflict with other factors set forth in § 3553(a), the court will have to resolve the conflicts.

**B.      Application of Principles to the Defendant**

In the present case, the defendant respectfully submits that the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

**1.      The Nature and Circumstances of the Offense and the History and Characteristics of the Offender**

**(a) Nature and Circumstances of Offense**

There is no question that Mr. Vowell's offense is serious.  Clearly there is no excuse for his actions in this case.  That being said, however, Mr. Vowell's actions cannot be viewed in a vacuum; instead, the Court must consider all of the 18 U.S.C. §3553(a) factors together to arrive at a sentence that is sufficient, but not greater than necessary, to satisfy the purposes of

12

sentencing.

### (b) History and Characteristics of Defendant

Mr. Vowell's history and characteristics are set forth in ¶¶60 - 77 of the PSR. Of particular note, is that Mr. Vowell's childhood and upbringing were particularly rough due to the verbal and physical abuse he suffered at the hands of his step-father. To escape this horrible reality, Mr. Vowell and his siblings began using drugs at a very early age. Mr. Vowell's mother specifically attributes Mr. Vowell's attitude of bitterness and that no one cares about him, to the abusive treatment he suffered at the hands of his step-father.

Additionally, Mr. Vowell's brother, David died in 1994 by suicide. Mr. Vowell and his brother were very close. This loss has been nearly impossible for Mr. Vowell to overcome.

Mr. Vowell has a 14 year old son who resides with his mother.

Finally, Mr. Vowell was placed in protective custody at the West Tennessee Detention Facility after being assaulted by other inmates after his guilty plea in this case.

### (1)    Mr. Vowell has family responsibilities.

Mr. Vowell has a responsibility to his 14 year old son. There has never been a *per se* rule precluding the consideration of family circumstances or parental responsibilities in determining a sentence under the previous mandatory sentencing guideline scheme. Section 5H1.6 of the United States Sentencing Guidelines provides that:

> Family ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range.

Every circuit court of appeals that considered this policy statement concluded that family considerations were an appropriate basis for departing downward if the circumstances were

13

extraordinary.  See United States v. Canoy, 38 F.3d 893, 906 (7th Cir. 1994) (citations omitted) (following "the other circuits [which] are unanimous in finding that section 5H1.6 permits departures from an imprisonment range to account for family circumstances in an extraordinary case.").  See also United States v. Fletcher, 15 F.3d 553, 557 (6th Cir. 1994)  (finding family responsibilities, in combination with other factors, to be a sufficient basis for downward departure).

Mr. Vowell submits that under the now advisory sentencing guideline scheme, a defendant no longer has to show that family circumstances or parental responsibilities are extraordinary.  Now, this Court must consider family circumstances and must consider parental responsibilities under 18 U.S.C. §3553(a).

**(2)     Mental and Emotional Health**

Mr. Vowell has severe mental and emotional health problems as set forth in ¶¶66 and 67. Additionally, a forensic evaluation was performed on Mr. Vowell.  The Court has received the results of that evaluation and counsel urges the Court to review that report thoroughly.  Mr. Vowell clearly has significantly reduced mental capacity and has suffered severe emotional trauma while growing up.  As noted in ¶60, Mr. Vowell was abused while growing up, had a "tough" childhood, and had to resort to drug use to escape the awful reality of his situation.  Mr. Vowell's brother, whom he was very close to, committed suicide.  Mr. Vowell's attitude is one of bitterness and that no one cares about him.  He has attempted suicide multiple times during his life.

Under the guidelines, mental, emotional, and physical health conditions are not "ordinarily" relevant.  U.S.S.G. §5H1.3, §5H1.4 Under U.S.S.G. §5K2.13, requests for

14

downward departures based on significantly reduced mental capacity are precluded for persons, like Mr. Vowell, who have been convicted of violations of Chapter 19A and 110 of title 18, United States Code. However, the viability of this prohibition is questionable in light of Booker. It is clear that Booker permits this Court to now take into consideration diminished mental capacity, even in cases like Mr. Vowell's when considering the 18 U.S.C. §3553(a) sentencing factors. For purposes of this discussion, reference to the law regarding the term "significantly reduced mental capacity" will help the Court put into context Mr. Vowell's mental health problems. Section 5K2.13 of the United States Sentencing Guidelines provides that:

The Application note to U.S.S.G. §5K2.13 defines the term "significantly reduced mental capacity, " (hereinafter, "SRMC"), as follows:

> "Significantly reduced mental capacity" means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful.

U.S.S.G. § 5K2.13, comment. (n.1) (2005). The Commission further described its definition of an SRMC as follows:

> The amendment ... defines "significantly reduced mental capacity" in accord with the decision in United States v. McBroom, 124 F.3d 533 (3rd Cir. 1997). The McBroom court concluded that "significantly reduced mental capacity" included both cognitive impairments (i.e., an inability to understand the wrongfulness of the conduct or to exercise the power of reason) and volitional impairments (i.e., an inability to control behavior that the person knows is wrongful). The application note specifically includes both types of impairments in the definition of significantly reduced mental capacity.

U.S.S.G. App. C §5K2.13, amendment 583 (1998) (internal citations omitted). It is important to note that U.S.S.G. §5K2.13 does not distinguish between SRMCs that explain the behavior that

15

constituted the crime charged and SRMCs that explain the behavior that motivated the crime. In other words, §5K2.13 does not require a direct causal link between the SRMC and the crime charged. United States v. Sadolsky, 234 F.3d 938, 943 (6th Cir. 2000).

Based on these factors, and Mr. Vowell's mental and emotional health, this Court must consider a reduction in the advisory guideline calculations because of Mr. Vowell's diminished mental capacity prior to and at the time of the offense. Mr. Vowell has spent most of his life suffering from early verbal and physical assaults and severe mental and emotional abuse and dealing with his severe mental illness along with the side effects attendant to these conditions. It is clear that he has committed the instant criminal offense, at least in part, as a result of his severe mental illness.

### (3) Potential for Abuse in Prison

Mr. Vowell is vulnerable to victimization and abuse in prison. Mr. Vowell is 5' 7" tall and weighs 170 pounds. Mr. Vowell has a number of physical problems attendant to his prior chronic drug addition. Mr. Vowell has already been assaulted during his pretrial detention in this matter. PSR ¶64.

Under the previous mandatory guideline regime, physical appearance was a discouraged departure factor under U.S.S.G. §5H1.4. Nevertheless, courts have reduced guideline ranges because of the potential vulnerability to victimization and abuse in prison. The leading case on this is Koon v. United States, 518 U.S. 81 (1996). In Koon, the United States Supreme Court held that it was not an abuse of discretion to grant a downward departure to police officers who were convicted of civil rights violation because of their vulnerability in prison. Koon v. United States, 518 U.S. 81 (1996). Subsequently, other courts have approved of reduced guideline

sentences because of the potential vulnerability to victimization and abuse in prison. See <u>United States v. Graham</u>, 83 F.3d 1466, 1481 (D.C.Cir. 1996) (extreme vulnerability to abuse in prison grounds for departure; case remanded to consider such); <u>United States v. Long</u>, 977 F.2d 1264, 1277-78 (8th Cir. 1992) (downward departure from 46 months to one-year home detention affirmed because defendant subject to victimization and potentially fatal injuries in prison); <u>United States v. Lara</u>, 905 F.2d 599, 605 (2nd Cir. 1990) (downward departure from 10 to 5 years where defendant's youthful appearance and bisexuality make him "particularly vulnerable to prison victimization" a factor "not adequately considered by guidelines"); <u>United States v. Gonzalez</u>, 945 F.2d 525 (2nd Cir. 1991) (downward departure affirmed where defendant had "feminine cast to his face" and "softness of features" which would make him prey to long-term prisoners).

In this case, Mr. Vowell is diminutive and both physically and mentally impaired. He stands convicted of crimes that are considered by fellow inmates to be the worst possible type of crime. He is certain to be victimized and abused in prison, and indeed already has been since he began his pretrial detention. Mr. Vowell submits that under the now advisory sentencing guideline scheme, this Court may consider his potential vulnerability to victimization and abuse in prison under 18 U.S.C. §3553(a).

**2.      The Need for the Sentence Imposed To Promote Certain Statutory Objectives**

**(A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense**

Mr. Vowell stands convicted of a violation of 18 U.S.C. §2251(a), and a violation of 18 U.S.C. §2252(a)(4)(B). There is no question that these offenses are serious. Mr. Vowell

understands that the advisory guideline range recommended in the PSR is 188 - 235 months. If the Court sustains Mr. Vowell's objections, as set forth above, then the advisory guideline range is 151 - 188 months. However, because of the application of 18 U.S.C. §2251(e), (which is specifically objected to above), to his case, Mr. Vowell is subject to a mandatory minimum 300 months on Count I.

It is Mr. Vowell' position that, in light of the factors contained in 18 U.S.C. §3553(a) this Court should impose a total sentence that is reasonable, in that it reflects the seriousness of the offense, promotes respect for the law, provides just punishment for this offense, and enables him to make full and timely restitution to the victim. Mr. Vowell submits that the mandatory minimum sentence of 300 months, (25 years), will accomplish all of these objectives.

**(B) afford adequate deterrence to criminal conduct**

It is submitted that the proposed sentence when considering all of the 18 U.S.C. §3553(a) factors affords an adequate deterrence to criminal conduct.

**(C) protect the public from further crimes of the defendant**

It is submitted that the proposed sentence when considering all of the 18 U.S.C. §3553(a) factors will adequately protect the public from further crimes of the defendant.

**(D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

In this case, it is submitted that the proposed sentence will provide Mr. Vowell with any needed educational training, vocational training, medical care, and other correctional treatment in the most effective manner. Mr. Vowell further requests that he be housed in a medical facility that will adequately address all of his physical and mental health problems.

3.    **The Kinds of Sentences Available**

In Booker, the Supreme Court severed and excised 18 U.S.C. § 3553(b), the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guidelines range. Booker, 2005 WL 50108 at *16.  This renders the sentencing guidelines advisory. Id.  As set forth above, Mr. Vowell submits that this Court can, in sustaining his legal and factual objections to the PSR, and considering all of the factors in 18 U.S.C. 3553(a), sentence him to a period of 300 months and that such a sentence is reasonable.

4.    **The Sentencing Range Established by the Sentencing Commission**

The guideline range in this matter, Mr. Vowell asserts is 151 - 188 months. However, there is a statutory mandatory minimum of 300 months.  It is asserted that a sentence of 300 months adequately reflects Mr. Vowell's conduct, his character, and his personal history.

5.    **The Need To Avoid Unwarranted Disparities**

Counsel submits that similarly situated defendants in this district have received sentences that are the same as that proposed for Mr. Vowell in this matter for similar conduct, given all of the 18 U.S.C. §3553(a) factors and more specifically, Mr. Vowell's family responsibilities, his mental and emotional health, and the potential that he will be abused in prison.  Accordingly, it is submitted that such a sentence in this case will not create unwarranted disparities between similarly situated defendants.

6.    **The need to provide restitution to any victims of the offense**

According to the PSR restitution is unknown at this point.  It is submitted, however, that if restitution is an issue and is ordered by the Court, the proposed 300 month sentence will not have a negative effect on Mr. Vowell's ability to pay restitution to the victim.


## V. Conclusion

For the foregoing reasons, Mr. Vowell respectfully submits that a sentence of 300 months is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

                                 Respectfully submitted,

                                 STEPHEN B. SHANKMAN
                               FEDERAL PUBLIC DEFENDER

                               s/Randolph W. Alden
                               RANDOLPH W. ALDEN
                               (Ohio Bar# 0061174)
                               Assistant Federal Defender
                               200 Jefferson Avenue, Suite 200
                               Memphis, TN 38103
                               (901) 544-3895

## CERTIFICATE OF SERVICE

I, Randolph W. Alden, certify that a true copy of the foregoing Position of Defendant with Regard to Sentencing Factors and Sentencing Memorandum was forwarded via the Court's electronic filing system to Mr. Dan Newsom, Assistant United States Attorneys, Suite 800, 167 North Main Street, Memphis, Tennessee, 38103.

**THIS** the 28th day of April, 2006.

                               s/ Randolph W. Alden
                               Assistant Federal Defender